IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| **ANTONIO MAURICE SCOTT, As Personal Representative of the Estate of GEORGE BYNUM,** | C/A No. 0:18-cv-01102-RMG-PJG |
| Plaintiff, | |
| v. | |
| **SIVA CHOCKALINGAM, M.D.; ASSOCIATES IN GASTROENTEROLOGY, P.A.; BERKELEY ENDOSCOPY CENTER, L.L.C.; ROBERT SHARP, M.D., In His Individual Capacity as Agent, Servant, And/Or Employee of the South Carolina Department of Corrections, SOUTH CAROLINA DEPARTMENT OF CORRECTIONS,** | |
| Defendants. | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS SIVA K. CHOCKALINGAM , M.D., ASSOCAITES IN GASTROENTEROLOGY, P.A., AND BERKELEY ENDOSCOPY CENTER, LLC

Plaintiff, Antonio Maurice Scott, as personal representative of the Estate of George Bynum, by and through his undersigned counsel, submits this Response in Opposition to Motion for Summary Judgment on behalf of Defendants Siva K. Chockalingam , M.D., Associates in Gastroenterology, P.A., and Berkeley Endoscopy Center, LLC, hereinafter "Defendants". (See ECF #61). The Plaintiff respectfully opposes the Defendants Motion for the following reasons.

Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. Brockbank v. Best Capital Corp., 341 S.C. 372,

534 S.E.2d 688 (2000); <u>Moriarty v. Garden Sanctuary Church of God</u>, 334 S.C. 150, 511 S.E.2d 699 (Ct. App. 1999), aff'd, 341 S.C. 320, 534 S.E.2d 672 (2000). "Because it is a drastic remedy, summary judgment should be cautiously invoked so no person will be improperly deprived of a trial of the disputed factual issues." <u>Carolina Alliance for Fair Employment</u>, 337 S.C. at 485, 523 S.E.2d at 799. Under Rule 56(c), SCRCP, the party seeking summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact. <u>Carolina Alliance for Fair Employment v. South Carolina Dep't of Labor, Licensing, and Regulation</u>, 337 S.C. 476, 523 S.E.2d 795 (Ct. App. 1999). In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the party opposing summary judgment. <u>Summer v. Carpenter</u>, 328 S.C. 36, 492 S.E.2d 55 (1997); <u>Pye v. Aycock</u>, 325 S.C. 426, 480 S.E.2d 455 (Ct. App. 1997). Because summary judgment is a drastic remedy, it must not be granted until the opposing party has had a "full and fair opportunity to complete discovery." <u>Dawkins v. Fields</u>, 354 S.C. 58, 69, 580 S.E.2d 433, 439 (2003); <u>Lanham</u>, 349 S.C. at 363, 563 S.E.2d at 334; <u>Doe v. Batson</u>, 345 S.C. 316, 322, 548 S.E.2d 854, 857 (2001); <u>Baird v. Charleston County</u>, 333 S.C. 519, 529, 511 S.E.2d 69, 74 (1999); <u>Baughman v. American Tel. & Tel. Co</u>., 306 S.C. 101, 112, 410 S.E.2d 537, 543 (1991)

As a general rule, the question of proximate cause is one of fact for the jury. <u>Ballou v. Sigma Nu Gen. Fraternity</u>, 291 S.C. 140, 352 S.E.2d 488 (Ct. App. 1986); <u>see also Hadfield v. Gilchrist</u>, 343 S.C. 88, 99, 538 S.E.2d 268, 274 (Ct. App. 2000) ("Proximate cause is a question for the finder of fact.") (citations omitted); <u>Vinson v. Hartley</u>, 324 S.C. 389, 402, 477 S.E.2d 715, 721 (Ct. App. 1996) ("Ordinarily, the question of proximate cause is one of fact for the jury and the trial judge's sole function regarding the issue is to inquire whether particular conclusions are the only reasonable inferences that can be drawn from the evidence.") "Only in rare or

exceptional cases may the question of proximate cause be decided as a matter of law." Ballou, 291 S.C. at 147, 352 S.E.2d at 493 (citation omitted); see also Small v. Pioneer Mach., Inc., 329 S.C. 448, 464, 494 S.E.2d 835, 843 (Ct. App. 1997)

The Defendants Motion for Summary Judgment must be denied, because contrary to the Defendants' arguments, there is evidence that Mr. Bynum's death was proximately caused by Dr. Chockalingam's deviations from the standard of care. Specifically proximate cause is a question for the jury when the record is supported by evidence and/or reasonable inferences that genuine issues of material fact exist. Generally, a genuine issue of material fact as to whether a Defendant performed a proper differential[1] , deviated from the acceptable standards of care, and whether a delay affected a patient's prognosis are typical issues that should be presented to a jury in a medical malpractice case. This case is no different.

First, Defendant Chockalingam testified that from the first time he saw Mr. Bynum, in November of 2014, he never acknowledged cancer as a possible diagnosis. In fact Dr. Chockalingam testified he never even had cancer on his list of differentials for Mr. Bynum. When questioned further about what symptoms would have alerted him to place cancer on his differential list he stated the only symptom that would have alerted him would be painful swallowing:

18 Q Would cancer be a part of your differential at this
19 --
20 A No.

(Dr. Chockalingam Depo. 60: 18-20). (See Pltf.'s Exhibit 1).

---

[1] As described by the Fourth Circuit,

> Differential diagnosis, or differential etiology, is a standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated.

Clausen, 339 F.3d at 1057 (footnote omitted) (citing Westberry v. Gislaved Gummi AB, 178 F.3d 257, 262 (4th Cir. 1999) (citation and internal quotation omitted)).

…

1 Q What other signs and symptoms, at this point,
2 besides the intense swallowing, would have alerted
3 you that it could potentially be a cancer issue?
4 A I don't think there would be any other I can think
5 of.
6 Q So the only -- the only symptom that would have
7 alerted you to cancer would be an intense
8 swallowing?
9 A Uh-huh.

(Dr. Chockalingam Depo. 62:1-9)(See Pltf.'s Exhibit 1).

25 Q What about symptoms that are associated with

1 esophageal cancer in general? What sorts of

2 symptoms would you kind of look out for?

3 MR. MCDOW: Object to the form of the

4 question.

5 A Dysphagia, trouble swallowing.

6 Q Would there be anything else?

7 A It'd be number one on the list.

8 Q So, if you -- if a patient comes in to see you and

9 they have dysphagia and trouble swallowing, it's

10 pretty high up on your differential for a potential

11 diagnosis: cancer -- esophageal cancer?

12 MR. MCDOW: Object to the form of the

13 question.

14 MR. PARHAM: Object to form.

15 A In a -- in a differential diagnosis and with --

16 with multiple possibilities, that would be, yes.

17 one of them.

(Dr. Chockalingam Depo. 79-80: 25; 1-17). (See Pltf.'s Exhibit 1).

17 Q Okay. So, then, why, earlier when we were talking,

18 was SCC or any type of esophageal cancer not part

19 of your differential for Mr. Bynum?

20 A I think there was a specific request for Schatzki's

21 ring. And I'm not sure how that was entertained,

22 but I think one of the directions was to

23 specifically look for Schatzki's ring and what's

24 going on in the distal part of the esophagus.

(Dr. Chockalingam Depo. 81: 17-24). (See Pltf.'s Exhibit 1).

As shown above cancer was never part of Dr. Chockalingam's differential diagnosis for Mr. Bynum. However, the record is full of evidence indicating that Mr. Bynum was complaining of painful swallowing since October of 2013 and possibly 2012. (See Pltf.'s Exhibit 2 SCDC Encounter Record and Pltf.'s Exhibit 3 SCOA Record). (See also, Pltf.'s Exhibit 4- Dr. Eisner's Expert report; Pltf.'s Exhibit 5- Dr. Catenacci's Expert Report; Pltf.'s Exhibit 6 -Dr. Chockalingam's visit notes). There is also evidence in the record that Mr. Bynum had troubling swallowing, weight loss and dysphasia; symptoms Dr. Chocklingham himself testified would alert him to cancer. (See *Id.*; See Dr. Chockalingam Depo. 79-80: 25; 1-17). Despite evidence showing Mr. Bynum presented with signs and symptoms of cancer, and that Dr. Chockalingam had knowledge that these symptoms should provide for a differential diagnosis of cancer, it was never even considered by Dr. Chockalingam.

Based upon the above, and Dr. Catenacci and Dr. Eisners' expert opinions that absent the failures of the Defendants an earlier diagnosis would have more likely than not given Mr. Bynum

a higher probability for long term survival, the Plaintiff has established proximate cause. (See Pltf.'s Exhibit 4- Dr. Eisner's Expert report; Pltf.'s Exhibit 5- Dr. Catenacci's Expert Report; Pltf.'s Exhibit 7- Dr. Catenacci's Affidavit). In sum, there is evidence that an earlier cancer diagnosis should have occurred in 2013 or shortly thereafter making Mr. Bynum's probability for long term survival greater than indicated by the Defendants. (See *Id.).*  Unfortunately due to the delays in treatment and deviations from the standard of care by the Defendants, Mr. Bynum was not diagnosed until his cancer progressed to Stage IV. However if timely caught, in October 2013 or shortly thereafter, Mr. Bynum's stage level would have been lower and the probability of survival would have been greatly increased, as opined by Dr. Catenacci. (See generally Pltf.'s Exhibit 7). Therefore the Plaintiff has established genuine issues of material fact exist and that there is evidence that the Defendants' failures proximately caused Mr. Bynum's death.

Put more simply there is evidence that different conclusions, other than those presented in Defendants Motion,  can be drawn from the record making summary judgment improper. Specifically Dr. Catenacci's Expert Report and Affidavit, Dr. Chockalingam's deposition, Dr. Eisner's Report, and Mr. Bynum's medical records taken together indicate that the Defendants failures caused Mr. Bynum's delay in diagnosis and if caught in October 2013 or shortly thereafter more likely than not would have given Mr. Bynum a higher probability for long term survival.

## II.    THERE IS EVIDENCE THAT DR. CHOCKALINGAM WAS DELIBERATELY INDIFFERNT TO MR. BYNUM'S HEALTH AND SAFETY, MAKING PLAINTIFF'S §1983 CLAIM PROPER.

The Plaintiff has sufficiently asserted facts to show that Defendant Chockalingam acted individually, personally, and with knowledge to deprive the Plaintiff of his constitutional rights. The Plaintiff has alleged specific conduct by the named Defendant that was the cause of the

Plaintiff's injuries complained of and that he acted personally, with full knowledge that his actions were in violation of policies, state and federal law, and could result in injury to the Plaintiff. (See generally Pltf.'s Complaint ¶¶9-22, 32-41). Defendant Chockalingam's liability rests on the premise that he can be held liable if he is found to have violated a prisoners constitutional rights and if the facts show that he was deliberately indifferent to a known excessive risk to the inmate's health and safety. See Farmer v Brennan, 511 U.S. at 837; Pruitt v Moore, No 02-395, 2003 WL 23851094, at *9 (D.S.C. Jul. 7, 2003).

During the time period in question Dr. Chockalingam failed to take even the most basic steps to ensure proper medical care was given to Mr. Bynum. As Plaintiff's expert opined in his expert report, Defendant Chockalingam's actions were deliberately indifferent to Mr. Bynum's health. (See Pltf.'s Exhibit 4- Dr. Eisner's Expert report). Dr. Chockalingam's actions, or lack thereof, were unreasonable given the fact that he would have had knowledge of the excessive risk to the inmate's health and safety when he failed to timely and properly assess, treat, diagnosis and do a proper work up on Mr. Bynum. As a doctor, Dr. Chockalingam is well aware that he must rule out the most significant diagnoses first, such as cancer. There is also evidence that a diagnosis of Barrettes, which Mr. Bynum had, may lead to cancer. However despite having this knowledge Dr. Chockalingam deliberately stated he did not put cancer on his differential diagnosis list. (See Dr. Chockalingam Depo. 81: 17-24); 79-80: 25; 1-17); 62:1-9); 60: 18-20). This action alone is deliberately indifferent to Mr. Bynum's health and safety and puts Mr. Bynum's health at risk. Additionally, contrary to the Defendants arguments, Mr. Bynum was not seen on a routine basis as indicated by the significant delays noted in Plaintiffs' expert Reports. (See Pltf.'s Exhibit 4- Dr. Eisner's Expert report; Pltf.'s Exhibit 5- Dr. Catenacci's Expert Report; Pltf.'s Exhibit 7- Dr. Catenacci' s Affidavit).

At the time of the alleged incident Mr. Bynum had protections under the Eighth and Fourteenth Amendments in which the Defendant knew and Dr. Chockalingam could not have consciously believed his actions were reasonable at the time. As a licensed doctor he acted completely contrary to the established guidelines of providing adequate and proper care to a patient. His deliberate actions of ignoring Mr. Bynum's requests for medical care, repeated complaints of pain, and ignoring cancer symptoms is a deliberate violation of the Plaintiffs constitutional rights. Therefore Defendants' Motion for Summary Judgment should be denied.

III.     **NOTWITHSTANDING THE ABOVE, SUMMARY JUDGMENT MUST NOT BE DECIDED UNTIL THE PLAINTIFF HAS HAD A FULL AND FAIR OPPPORUNITY FOR DISCOVERY.**

Notwithstanding the above, summary judgment must not be granted until the Plaintiff has had a full and fair opportunity to complete discovery. Thus granting the Defendants summary judgment, at this time, would be inappropriate as the answer to this question is still currently pending before the Court. Plaintiff has not had a full and fair opportunity to fully develop the record as previously briefed in ECF's 54-Plaintiff's Motion to Compel and 55-Plaintiff's Motion for Extension of the Scheduling Order. In ECF's 54 and 55 the Plaintiff specifically outlined all the hurdles he has faced during the discovery period in this case and all outstanding discovery needed. The Plaintiff has pointed to several actions by the Defendants to block the Plaintiff from: (1) receiving relevant discovery including images of Mr. Bynum's scans and procedures and (2) taking properly noticed depositions within the discovery timeframe. Additionally Plaintiff's expert, Dr. Eisner, noted in his expert report that he did not have all the images available to be able to make all his critical determinations against Dr. Chockalingam in this case and as such would like to supplement his report regarding the deviations of care once received. (See Pltf.'s Exhibit 4- Dr. Eisner's Expert report). The Plaintiff is still currently waiting on all images for

Mr. Bynum's scans to be turned over by the Defendants. Therefore, further inquiry into the facts of this case is required and summary judgment is not appropriate. (See e.g. <u>Schmidt et.al v Courtney et.al</u>, 357 S.C. 310, 592 S.E.2d 326 (Ct. App. 2003) (finding the trial court erred in granting the Defendant's Motion for Summary Judgment when more time was needed in discovery). Therefore, and in the alternative, summary judgement must not be decided until Plaintiff's Motion to extend the discovery phase is ruled upon and all outstanding discovery documents are produced.

<u>**CONCLUSION**</u>

This is not a rare case in which proximate cause should be decided as a matter of law as the Defendants suggest. It is a case in which the record consists of ample evidence, including deposition testimony, medical records, and expert opinions to allow several reasonable inferences thus requiring the determination of proximate cause to be one for the jury. Further, the Plaintiff argues further inquiry into the facts of this case is required and thus summary judgment is not appropriate because he has not had a full and fair opportunity to complete discovery. Therefore, Defendants Motion for Summary Judgment must be denied.

**[SIGNATURE BLOCK ON FOLLOWING PAGE]**

Respectfully submitted,

**BELL LEGAL GROUP, LLC**

<u>*s/ J. Edward Bell, III*</u>
 J. Edward Bell, III (#1280)
Gabrielle A. Sulpizio (#12715)
219 North Ridge Street
TEL.:(843)546-2408
FAX: (8430 546-9604
ebell@edbelllaw.com

**ATTORNEYS FOR PLAINTIFFS**

April 15, 2019
Georgetown, South Carolina