IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Antonio Maurice Scott, As Personal Representative of the Estate of George Bynum,<br><br>   Plaintiff,<br><br>v.<br><br>Siva Chockalingam, MD, in his Individual Capacity as Agent, Servant and/or Employee of the South Carolina Department of Corrections; Associates in Gastroenterology, PA; Berkeley Endoscopy Center, LLC, Robert Sharp, MD, in his Individual Capacity as Agent, Servant and/or Employee of The South Carolina Department of Corrections; and South Carolina Department of Corrections,<br><br>   Defendants.<br>_____ | Civil Action No.: 0:18-cv-1102-RMG-PJG<br><br><br><br><br><br>REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR A STAY OF DISCOVERY ON BEHALF OF DEFENDANT, SOUTH CAROLINA DEPARTMENT OF CORRECTIONS |

  Defendant, South Carolina Department of Corrections (SCDC), replies to Plaintiff's Response in Opposition to Defendant's Motion to Stay of Discovery, as follows:

  Defendant SCDC requests a stay of Plaintiff's attempts to extend discovery pursuant to a Motion to Amend Scheduling Order (Document #55) and a Motion to Compel (Document #54).

1

LAW

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). Whether a federal district court should grant or deny a motion to stay "calls for an exercise of judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." United States v. Ga. Pac. Corp., 562 F.2d 294, 296 (4th Cir. 1977) (citing Landis, 299 U.S. at 254). The court "must weigh competing interests and maintain an even balance." Landis, 299 U.S. at 254-55 (citing Kan. City S. Ry. Co. v. United States, 282 U.S. 760, 763 (1931); Enelow v. N.Y. Life Ins. Co., 293 U.S. 379, 382 (1935)).

Traditionally, a court may consider the following factors when deciding whether to stay legal proceedings: "(1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the case is in fact stayed." Mitchell v. Lonza Walkersville, Inc., C/A No. RDB-12-3787, 2013 WL 3776951, at *2 (D. Md. July 17, 2013) (citing Yearwood v. Johnson & Johnson, Inc., C/A No. RDB-12-1374, 2012 WL 2520865, at *3 (D. Md. June 27, 2012)). See also Int'l Refugee Assistance Project v. Trump, 323 F. Supp. 3d 726, 731 (D. Md. 2018); Brandt v. BP, P.L.C., C/A No. 2:10-cv-01460, 2010 WL 2802495, at *2 (D.S.C. July 14, 2010). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent

proceedings which bear upon the case." Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 862 (9th Cir. 1979). The decision to grant a stay is within the "sound discretion" of a federal district court. Ryan v. Gonzales, 568 U.S. 57, 74 (2013) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). Generally, the party seeking a stay "must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983). In other words, the proponent of a stay "bears the burden of establishing its need." Clinton v. Jones, 520 U.S. 681, 708 (1997) (citing Landis, 299 U.S. at 255).

As it specifically relates to staying discovery, a federal district court has a "broad inherent power to stay discovery until preliminary issues can be settled which may be dispositive of some important aspect of the case." Simpson v. Specialty Retail Concepts, Inc., 121 F.R.D. 261, 263 (M.D.N.C. 1988) (citing Petrus v. Bowen, 833 F.2d 581 (5th Cir. 1987)). In many instances, "[a] motion to stay discovery is tantamount to a request for a protective order prohibiting or limiting discovery pursuant to Rule 26(c) [of the Federal Rules of Civil Procedure]." Kron Med. Corp. v. Groth, 119 F.R.D. 636, 637 (M.D.N.C. 1988). The filing of a dispositive motion does not, by itself, warrant the issuance of a stay. See Herring v. Lapolla Indus., Inc., No. 2:12-cv-02705-RMG, 2013 WL 12148769, at *1 (D.S.C. Aug. 30, 2013) (citing Hollings v. U.S. Tennis Ass'n, 469 F. Supp. 2d 67, 78 (E.D.N.Y. 2006)). The moving party bears the burden of showing good cause and that a stay of discovery in reasonable. See Kron Med. Corp., 119 F.R.D. at 637. Brown-Thomas v. Hynie (D. S.C., 2019)

When deciding on a motion to stay, a court considers four factors:

3

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. Nken v. Holder, 556 U.S. 418, 426 (2009). Contravest Inc. v. Mt. Hawley Ins. Co. (D. S.C., 2018)

## DISCUSSION

Plaintiff argues that "there exists multiple genuine issues of material fact" and further states he is "ethically troubled" that Defendant SCDC contends that its Motion for Summary Judgment is "based upon matters of law". Setting aside Plaintiff's allegation of ethical violations by Defendant SCDC and its counsel in filing proper and appropriate motions and responses in opposition to Plaintiff's motions, there are no questions of material fact against Defendant SCDC.

On September 21, 2018, the date of Plaintiff's first expert deadline, Plaintiff disclosed expert Daniel Catenacci, MD, an oncologist (Exhibit A). In his report, Dr. Catenacci states he reviewed the SCDC medical records and states that Mr. Bynum began complaining of dysphasia in July 2014 (not in October 2013). Dr. Catenacci does not state Defendants SCDC or Dr. Sharp violated any standards of care that are a proximate cause of Mr. Bynum's injuries and death.

On the same date, Plaintiff moved to extend his expert deadline for 60 days to disclose a second expert. Defendants consented to the extension.

4

On November 19, 2018, Plaintiff disclosed his second expert, Todd Eisner, MD, a gastroenterologist (Exhibit B). In his report, Dr. Eisner states he reviewed the SCDC medical records and states that Mr. Bynum first complained of chest pain and trouble swallowing in July 2014 (not in October 2013). Dr. Eisner <u>does not</u> state Defendants SCDC or Dr. Sharp violated any standards of care that are a proximate cause of Mr. Bynum's injuries and death.

Plaintiff now attempts to misdirect this Court by producing an "amended" report by expert Dr. Eisner dated March 20, 2019 (Exhibit C), in which he states for the first time that Defendant SCDC violated standards of care as far back as October 2013, a date that is not mentioned in his original report (the new additional paragraphs are marked in the Report). This new opinion is disingenuous considering Dr. Eisner's initial report states he reviewed the SCDC medical records and did not opine that Defendant SCDC violated any standards of care. Plaintiff produced Dr. Eisner's "amended" report 4 months beyond the Court's deadline for Plaintiff to disclose experts and their reports, and it is disclosed without the permission of this Court. It is interesting that Dr. Eisner was able to state this new opinion without the additional discovery Plaintiff believes he so "desperately needs" to prosecute his case against SCDC and which is the basis for the Motion to Compel and Motion to Amend Scheduling Order (this issue is further discussed below).

Plaintiff further attempts to misdirect this Court by producing an Affidavit by expert Dr. Catenacci dated April 15, 2019 (Exhibit D), in which he references Mr. Bynum's medical care in October 2013 in relation to the issue of causation. This new opinion is also disingenuous considering Dr. Catenacci's initial report states he reviewed the SCDC

5

medical records and did not mention anything about care in October 2013. Plaintiff produced Dr. Catenacci's Affidavit (which is really an amended report) 5 months beyond the Court's deadline for Plaintiff to disclose experts and their reports, and it is disclosed without the permission of this Court. It also is interesting that Dr. Catenacci was able to state this new opinion without the additional discovery Plaintiff believes he so "desperately needs" to prosecute his case against SCDC and which is the basis for the Motion to Compel and Motion to Amend Scheduling Order (this issue is further discussed below).

Clearly, Plaintiff has directed his experts to "create" new opinions at the last minute to attempt to overcome Defendant SCDC's Motion for Summary Judgment. These "new" opinions are based upon the same SCDC medical records the experts reviewed before producing their "original" opinions. The amended reports by Plaintiff's experts are revealed outside of the Court's deadline and should not be considered in the Court's decision on Defendant's Motion for Summary Judgment.

Without any expert opinions that Defendant SCDC was negligent or grossly negligent and violated standards of medical practice in the care and treatment of George Bynum, as a "matter of law", Plaintiff failed to meet his burden of proof to overcome Defendant SCDC's Motion for Summary Judgment.

Assuming for argument Defendant SCDC violated standards of medical practice and was grossly negligence in the care and treatment of Mr. Bynum, Plaintiff failed to provide expert opinions that these violations of standards of practice "most likely" proximately caused George Bynum's injuries and death. Plaintiff's experts' original

6

opinions about proximate cause only rise to the level of "loss of chance" and not "probability", whereas Defendant SCDC's oncology expert and Co-Defendants' expert state that even in patients with the earliest stages of this type of disease/cancer and its location, the survival rate does not exceed 50%, meaning no matter when the cancer was diagnosed, Mr. Bynum most likely was going to die.  Even Dr. Eisner's "amended" expert report and Dr. Catenacci's "new" Affidavit do not correct the failure to meet the "most likely" requirement of proximate cause. Dr. Catenacci, an oncologist does <u>not</u> state clearly and succinctly that Mr. Bynum's survivability was greater than 50% at any time, because he knows it is not true.

Plaintiff further argues that Defendant SCDC kept Plaintiff from gathering information to prove his claims and overcome any "legal arguments". Once again, it is interesting that without any of this additional discovery, Plaintiff's experts were able to amend their reports to include "new" opinions about violations of standards of medical practice and proximate cause. When these experts prepared their initial reports, they did not qualify their opinions by stating they needed any of the information and documentation Plaintiff is now demanding from Defendant SCDC

Furthermore, Plaintiff contends that Defendant SCDC's failure to produce (1) a copy of certain radiology studies, (2) additional SCDC medical records, (3) a Rule 30(b)(6) deponent, and (4) appropriate responses to Plaintiff's 4th Requests for Production dated February 26, 2019, have kept him from "gathering information that will allow him to prove his claims and overcome any legal defenses".  All these documents and information were not requested until over 8 months after discovery began.

7

First, Defendant SCDC does not have a copy of the scans for the esophageal manometry study performed on February 11, 2016, or for the EGD done on May 13, 2016, both of which were performed at Palmetto Richland. Plaintiff also fails to explain how an EKG done at SCDC on July 9, 2014, is relevant to the diagnosis of esophageal cancer. Furthermore, 10 months after the esophageal cancer diagnosis was made, Mr. Bynum's abdominal x-ray was performed at SCDC on March 21, 2017. When the ImageCare representative was deposed, Plaintiff learned that ImageCare read the abdominal x-ray and issued a report (Exhibit E), which was produced to Plaintiff during the deposition. The report does not show any evidence that Mr. Bynum's cancer had spread to his abdomen. If Plaintiff claims this x-ray was not read correctly, that is an issue against ImageCare, not SCDC.

Second, regarding the "hard chart" Dr. Chockalingam mentioned in his deposition and that Plaintiff now wants, this "hard chart" is the "non-computer" medical records at SCDC. By letter dated June 22, 2018 (Exhibit F), Defendant SCDC produced a copy of several hundred pages of Mr. Bynum's SCDC medical records, which include the computer medical encounters and the "hard chart" paper records. In fact, Plaintiff used many of the "hard chart" records as Exhibits to his Motions, Responses in Opposition and Replies.

Third, although Plaintiff lists several 30(b)(6) deposition designations for SCDC (Exhibit G), he now states in his Response in Opposition that the only relevant designation concerns the information about how appointments are scheduled at SCDC and who at SCDC scheduled them for Mr. Bynum. The SCDC medical records show the

dates when Mr. Bynum's appointments were requested and the dates when the appointments were scheduled. Any expert can review the medical records and give opinions about when appointments should have been made and how an alleged delay in making an appointment caused a delay in treatment that may or may not be a proximate cause of Mr. Bynum's injuries and death from cancer. Furthermore, as stated in previous Motions and Responses in Opposition, Plaintiff unilaterally noticed the 30(b)(6) deposition for March 8, 2019; however, Co-Defendants' attorney, not Defendant SCDC's attorney, was unable to attend the deposition on that date and asked for it to be re-scheduled. Plaintiff never noticed the deposition again. Defendant SCDC cannot move to quash or move for a protective order until something exists that needs to be quashed or protected.

Fourth, Defendant SCDC's arguments about the relevancy of the 30(b)(6) deposition are the same for the relevancy of Plaintiff's 4th Requests for Production dated February 26, 2019, to which Defendant SCDC responded on March 26, 2019 (Exhibit H). A review of the Requests shows that none of them are relevant to the care that Mr. Bynum did or did not receive from Defendant SCDC or to how the care or lack of it may or may not be a proximate cause of Mr. Bynum's injuries and death.

Plaintiff's pursuit of this discovery reveals that he is more interested in irrelevant documentation and information than the facts and medicine in this negligence case. Plaintiff had at least 6 months to ask for this discovery before the deadline for naming experts, but waited 2 or more months after the expert deadline before making an initial request for the documents and the 30(b)(6) deposition. In the past 11 months, Plaintiff only requested to take the deposition of one "fact" witness from Defendant SCDC, Dr.

Sharp, and it was scheduled on February 25, 2019. Plaintiff then canceled Dr. Sharp's deposition one hour before it was to start and dismissed the deliberate indifference cause of action against Dr. Sharp, although for some reason Dr. Eisner a month later in his March 20, 2019, "amended" report states that Dr. Sharp was deliberately indifferent.

Mr. Bynum's SCDC medical records show the care and treatment Defendant SCDC provided to Mr. Bynum, which is all that any expert, including Defendant SCDC's experts, need to prepare expert opinions. The facts show that Defendant SCDC referred Mr. Bynum to a higher level of care. Defendant Dr. Chockalingam, the gastroenterologist, performed an EGD in December 2014 and another one in August 2015. During each EGD, Dr. Chockalingam took biopsy specimens of Mr. Bynum's esophagus and submitted them to a pathologist, who determined the specimens were negative for cancer. Dr. Chockalingam reported this information to Defendant SCDC. During a third EGD in May 2016, Defendant Dr. Chockalingam found dysplasia, which he thought was suspicious for cancer. He referred Mr. Bynum to MUSC where the cancer was confirmed.

Plaintiff now argues that Defendant SCDC should have referred Mr. Bynum to a gastroenterologist at least a year before October 2014. It is incredulous to believe Plaintiff's argument that an earlier referral would have revealed an esophageal cancer, when the pathology reports in December 2014 and August 2015 were negative for cancer. The only way Plaintiff makes this argument work is to have his experts claim that Dr. Chockalingam missed the cancer when he performed the EGDs in December 2014 and August 2015.  Defendant SCDC is not liable or responsible for a misdiagnosis of Mr. Bynum's cancer. As a referring specialist, Dr. Chockalingam stated in his deposition that

10

Defendant SCDC had a right to rely on his diagnosis, which was based upon the negative pathology reports, and had a right to rely on his recommended treatment for Mr. Bynum's swallowing problems (Exhibit I), which were followed by Defendant SCDC.

## CONCLUSION

The only potential prejudice to Plaintiff in staying discovery is for the Court to grant Defendant SCDC's Motion for Summary Judgment based upon Plaintiff's failure to satisfy the medical malpractice expert opinion requirements regarding violation of standards of care and proximate cause. By allowing Plaintiff to extend the Scheduling Order deadlines for depositions, written discovery and naming new experts, it will reward Plaintiff for not producing the necessary expert opinions within the Court-ordered deadlines and, after learning from Defendants the weaknesses in his case, it will allow Plaintiff to attempt to correct these weaknesses to overcome Defendant SCDC's Motion for Summary Judgment. This conduct is already revealed by Plaintiff producing an "amended" report from one expert and an Affidavit from the other expert without the permission of the Court, all of which were created after Plaintiff learned the deficiencies of his case from Defendants' arguments in their Motions for Summary Judgment.

Defendant SCDC and the Co-Defendants have made a strong showing that they are likely to succeed on the merits of their Motions for Summary Judgment. Allowing Plaintiff, a year after the case was filed, to begin discovery again, name new experts and obtain documentation and information from more depositions, will cause a hardship and inequity to Defendants and will irreparably injure Defendants absent a stay of discovery. With a stay of discovery, including a denial of the Motion to Amend the Scheduling Order

and the Motion to Compel, judicial resources will be saved, and the public interest in the orderly conduct of discovery will be met.

Based upon the above arguments and those found in Defendant SCDC's Response in Opposition to Plaintiff's Motion to Amend Scheduling Order (Document #55) and Motion to Compel (Document #54), Defendant SCDC's Motion to Stay Discovery should be granted.

|  |  |
|---|---|
| | s/James E. Parham, Jr. |
| | James E. Parham, Jr. |
| | Federal I.D. #2969 |
| |    Attorney for Defendant, |
| |    South Carolina Department of |
| |    Corrections |
| | Post Office Box 1576 |
| | Irmo, South Carolina   29063 |
| | 803-749-8555 |
| April 17, 2019 | jparham@jparhamlaw.com |