IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Antonio Maurice Scott, As Personal Representative of the Estate of George Bynum,<br><br>   Plaintiff,<br><br>v.<br><br>Siva Chockalingam, MD, in his Individual Capacity as Agent, Servant and/or Employee of the South Carolina Department of Corrections; Associates in Gastroenterology, PA; Berkeley Endoscopy Center, and South Carolina Department of Corrections,<br><br>   Defendants.<br>_____ | Civil Action No.: 0:18-cv-1102-RMG-PJG<br><br>REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO <u>SECOND</u> MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANT, SOUTH CAROLINA DEPARTMENT OF CORRECTIONS |

  Defendant South Carolina Department of Corrections (SCDC) replies to Plaintiff's Response in Opposition to Defendant SCDC's Second Motion for Summary Judgment, as follows:

  Defendant SCDC moves for Summary Judgment a second time upon the grounds that Plaintiff's State claims for medical malpractice and gross negligence and for violations of standards of medical practice should be dismissed, because Plaintiff failed to produce expert testimony to show that Defendant SCDC was negligent and grossly negligent and violated standards of medical practice in its care and treatment of George Bynum that are a proximate cause of George Bynum's injuries and death.

1

Plaintiff's argument that "there are several genuine issues of material fact" and "ample evidence that Defendant SCDC deviated from the standard of care and those deviations caused Mr. Bynum's injuries" is misplaced and incorrect.

On September 21, 2018, the date of Plaintiff's first expert deadline, Plaintiff disclosed expert Daniel Catenacci, MD, an oncologist (Exhibit A). In his report, Dr. Catenacci states he reviewed the SCDC medical records and states that Mr. Bynum began complaining of dysphasia in July 2014 (not in October 2013). Dr. Catenacci <u>does not</u> state Defendants SCDC or Dr. Sharp violated any standards of care that are a proximate cause of Mr. Bynum's injuries and death.

On the same date, Plaintiff moved to extend his expert deadline for 60 days to disclose a second expert. Defendants consented to the extension.

On November 19, 2018, Plaintiff disclosed his second expert, Todd Eisner, MD, a gastroenterologist (Exhibit B). In his report, Dr. Eisner states he reviewed the SCDC medical records and states that Mr. Bynum first complained of chest pain and trouble swallowing in July 2014 (not in October 2013). Dr. Eisner <u>does not</u> state Defendants SCDC or Dr. Sharp violated any standards of care that are a proximate cause of Mr. Bynum's injuries and death.

On January 11, 2019, Defendants SCDC and Dr. Sharp filed their first Motion for Summary Judgment regarding all State and Federal claims and causes of action (Document #43). In support of their Motion to dismiss the state claims for medical malpractice and gross negligence and for violations of standards of medical practice, Defendants SCDC and Dr. Sharp submitted the expert reports of Dr. Wm. Jackson

2

Epperson (Family Practice) and Dr. Mieke Perez (Internal Medicine), in which they state Defendant SCDC, and its employees, including Defendant Dr. Sharp, did not violate any standards of medical practice in the care and treatment of George Bynum that are a proximate cause of his injuries and death. Defendants SCDC and Dr. Sharp also submitted the expert report of Dr. Sharp (oncologist) who states that patients with the earliest stages of cancer of the esophagus do not have long-term cancer specific survival exceeding 50%.

Because Plaintiff did <u>not</u> produce any medical expert reports to support his state claims against Defendants SCDC and Dr. Sharp, Plaintiff failed to meet his burden of proof to overcome Defendants' first Motion for Summary Judgment regarding the state claims for medical negligence and gross negligence and for violations of standards of medical practice. Accordingly, there was no genuine issue as to any material fact regarding Plaintiff's state claims for medical malpractice and gross negligence and for violations of standards of medical practice, and therefore, Defendants SCDC and Dr. Sharp were entitled to judgment as a matter of law.

On February 25, 2019, the day Plaintiff was scheduled to take Dr. Sharp's deposition and the deadline for Plaintiff to file his Response in Opposition to the Motion for Summary Judgment, Plaintiff offered to dismiss the Federal §1983 deliberate indifference cause of action against Dr. Sharp with prejudice, if Defendants SCDC and Dr. Sharp withdrew their Motion for Summary Judgment with leave to refile. Defendants SCDC and Dr. Sharp withdrew their Motion for Summary Judgment on March 12, 2019 (Document #51). The Stipulation of Dismissal for Dr. Sharp was filed on March 11, 2019

(Document #52).

As discussed below, we now know why Plaintiff wanted to get Defendants' first Motion for Summary Judgment withdrawn.

In his Response in Opposition, Plaintiff now misdirects this Court by producing an "amended" report by expert Dr. Eisner dated March 20, 2019 (Exhibit C), in which he states for the first time that Defendant SCDC violated standards of care as far back as October 2013, a date that is not mentioned in his original report (the new additional paragraphs are marked in the Report). This new opinion is disingenuous considering Dr. Eisner's initial report states he reviewed the SCDC medical records and did not opine that Defendant SCDC violated any standards of care.

Plaintiff produced Dr. Eisner's "amended" report 8 days after Defendant SCDC withdrew its first Motion for Summary Judgment and 4 months beyond the Court's deadline for Plaintiff to disclose experts and their reports, and it is disclosed without the permission of this Court.  It is interesting that Dr. Eisner was able to state this new opinion without the additional discovery Plaintiff believes he so "desperately needs" to prosecute his case against Defendant SCDC and which is the basis for the Motion to Compel and Motion to Amend Scheduling Order.

Plaintiff further attempts to misdirect this Court by producing an Affidavit by expert Dr. Catenacci dated April 15, 2019 (Exhibit D), in which he now references Mr. Bynum's medical care in October 2013 in relation to the issue of causation. This new opinion is also disingenuous considering Dr. Catenacci's initial report states he reviewed the SCDC medical records and did not mention anything about care in October 2013.

4

Plaintiff produced Dr. Catenacci's Affidavit (which is really an amended report) 2 weeks after Defendant SCDC filed its Second Motion for Summary Judgment, in which it raised for the first time the issue of Plaintiff's failure to satisfy the requirement of proximate cause – it was not argued in the first Motion for Summary Judgment, and 5 months beyond the Court's deadline for Plaintiff to disclose experts and their reports, and it is disclosed without the permission of this Court. It also is interesting that Dr. Catenacci was able to state this new opinion without the additional discovery Plaintiff believes he so "desperately needs" to prosecute his case against Defendant SCDC and which is the basis for the Motion to Compel and Motion to Amend Scheduling Order.

Clearly, Plaintiff has directed his experts to "create" new opinions at the last minute to attempt to overcome Defendant SCDC's Second Motion for Summary Judgment. These "new" opinions are based upon the same SCDC medical records the experts reviewed before producing their "original" opinions and are revealed outside of the Court's deadline.

Furthermore, assuming for argument Defendant SCDC violated standards of medical practice and was grossly negligence in the care and treatment of Mr. Bynum, Plaintiff failed to provide expert opinions that these violations of standards of practice "most likely" proximately caused George Bynum's injuries and death. Plaintiff's experts' original opinions about proximate cause only rise to the level of "loss of chance" and not "probability", whereas Defendant SCDC's oncology expert, Dr. Stark, and Co-Defendants' expert state that even in patients with the earliest stages of this type of disease/cancer and its location, the survival rate does not exceed 50%, meaning no matter when the

cancer was diagnosed, Mr. Bynum most likely was going to die.

Even Dr. Eisner's "amended" expert report and Dr. Catenacci's "new" Affidavit do not correct the failure to meet the "most likely/greater than 50%" requirement of proximate cause. Plaintiff's oncologist, Dr. Catenacci only states that with an earlier diagnosis, Mr. Bynum had "a higher probability for long term survival and higher probability of cure"; which can mean 10% to 11% or 20% to 40%. Dr. Catenacci does not state clearly and succinctly that Mr. Bynum's survivability was greater than 50% at any time, because he knows it is not true.

Plaintiff further argues that Defendant SCDC kept Plaintiff from gathering information to prove his claims and overcome any "legal arguments". Once again, it is interesting that without any of this additional discovery, Plaintiff's experts were able to amend their reports to include "new" opinions about violations of standards of medical practice and proximate cause. When these experts prepared their initial reports, they did not qualify their opinions by stating they needed any of the information and documentation Plaintiff is now demanding from Defendant SCDC (also, see Defendant SCDC's discussion of the timing of Plaintiff's discovery and its relevancy in its Response in Opposition to Plaintiff's Motion to Compel and Motion to Amend Scheduling Order and in its Reply to Plaintiff's Response in Opposition to Defendant SCDC's Motion to Stay Discovery).

Plaintiff's pursuit of this discovery reveals that he is more interested in irrelevant documentation and information than the facts and medicine in this negligence case. Plaintiff had at least 6 months to ask for this discovery before the deadline for naming

6

experts, but waited 2 or more months after the expert deadline before making an initial request for the documents and the 30(b)(6) deposition. In the past 11 months, Plaintiff only requested to take the deposition of one "fact" witness from Defendant SCDC, Dr. Sharp, and it was scheduled on February 25, 2019. Plaintiff then canceled Dr. Sharp's deposition one hour before it was to start and dismissed the deliberate indifference cause of action against Dr. Sharp, although for some reason Dr. Eisner a month later in his March 20, 2019, "amended" report states that Dr. Sharp was deliberately indifferent.

Mr. Bynum's SCDC medical records show the care and treatment Defendant SCDC provided to Mr. Bynum, which is all that any expert, including Defendant SCDC's experts, need to prepare expert opinions. The facts show that Defendant SCDC referred Mr. Bynum to a higher level of care. Defendant Dr. Chockalingam, the gastroenterologist, performed an EGD in December 2014 and another one in August 2015. During each EGD, Dr. Chockalingam took biopsy specimens of Mr. Bynum's esophagus and submitted them to a pathologist, who determined the specimens were negative for cancer. Dr. Chockalingam reported this information to Defendant SCDC. During a third EGD in May 2016, Defendant Dr. Chockalingam found dysplasia, which he thought was suspicious for cancer. He referred Mr. Bynum to MUSC where the cancer was confirmed.

Plaintiff now argues that Defendant SCDC should have referred Mr. Bynum to a gastroenterologist at least a year before October 2014. It is incredulous to believe Plaintiff's argument that an earlier referral would have revealed an esophageal cancer, when the pathology reports in December 2014 and August 2015 were negative for cancer. The only way Plaintiff makes this argument work is to have his experts claim that

7

Dr. Chockalingam missed the cancer when he performed the EGDs in December 2014 and August 2015. Defendant SCDC is not liable or responsible for a misdiagnosis of Mr. Bynum's cancer. As a referring specialist, Dr. Chockalingam stated in his deposition that Defendant SCDC had a right to rely on his diagnosis, which was based upon the negative pathology reports, and had a right to rely on his recommended treatment for Mr. Bynum's swallowing problems (Exhibit I), which were followed by Defendant SCDC.

Without any expert opinions that Defendant SCDC was negligent or grossly negligent and violated standards of medical practice in the care and treatment of George Bynum and/or that Defendant SCDC's negligence, gross negligence and violations of standards of medical practice, are a proximate cause of Mr. Bynum's injuries and death, there is no genuine issue as to any material fact and Defendant SCDC is entitled to judgment as a matter of law.

Accordingly, Defendant SCDC's Second Motion for Summary Judgment should be granted, and Plaintiff's causes of action should be dismissed with prejudice.

s/James E. Parham, Jr.  
James E. Parham, Jr.  
Federal I.D. #2969  
    Attorney for Defendant,  
    South Carolina Department of  
    Corrections  
Post Office Box 1576  
Irmo, South Carolina 29063  
803-749-8555  
jparham@jparhamlaw.com

April 19, 2019